Good morning. May it please the Court. Rick Wetmore on behalf of Plaintiff Vandervert Construction. I'd like to reserve three minutes for rebuttal. This case is about the interpretation and application of an all-risk insurance policy. Now, as an initial matter, it's important to understand the distinction that is significant between all-risk policies and specified peril policies. Under an all-risk policy, the insurer assumes the risk of all causes of loss that are not specifically excluded under the policy. Under a specified peril policy, the insured bears that risk because only the risks identified within the policy are specifically insured against. As I said, this case is about an all-risk policy. The issue under this particular policy is the distinction between damage caused generally by water, caused by rain, or caused by surface water, including the accumulation of water from any source on a roof. The laws of nature, insurance interpretation, and the specific language of this policy confirms that there is indeed a metaphysical transformation that occurs between rain once it lands on the surface of the earth, including artificial structures. The difficulty I have with your argument, counsel, is the specificity of the requirement that the roof be complete before there's any coverage of rain damage. And that seems to me to be different from all the other cases that you've cited. Do you have any cases dealing with a similar rain exclusion that specifies that the roof has to be complete and lays out all the things of what it means to have a complete roof? Not in that specific context, Your Honor. However, I think that the NOVA case is close in that if you look at the specificity within this policy and identifying what constitutes completion, the paragraph immediately before that identifies that that's the second part of the test for coverage. And it says that there is no coverage unless there is damage from another covered cause of loss before. And so that occurs before, such as a crane falling and breaking through the roof. That same language is included in the NOVA case, in the NOVA policy, in which the policy says specifically that there is no coverage unless there is damage to the roof from a covered cause of loss. And again, in the NOVA case, and that is a very, other than the distinction identified by the court just now, that case is very similar to the facts here. The court spent a significant time identifying the difference between rain and surface water and concluded unambiguously that those two things are distinctly different. And at the moment that the rain hits the roof and then, worse yet, accumulates, that is a distinctly different loss than rain. Well, when rain lands, it turns into non-rain. Is that your position? That's what it sounds like. But then how does this ever work if rain, sleet, ice, or snow, whether driven by wind or not, enters the interior of the covered property? I don't understand. It has to land before it gets inside. I just don't understand your position, to be honest. Sure, Your Honor. The position is that under that provision, if the rain were to enter the building directly through an open window, through a hole in the roof, through any number of other examples. But that doesn't make sense because it's covered if the exterior is complete, including the roof. So the only way that that can happen is if it gets inside the property somehow. Interestingly, the same issue has been discussed and identified by other courts. Some of the cases cited in the pleading... I mean, it says the exterior is complete only when it's been constructed to a point that is fully weather-resistant and it includes roof and the roof drainage system being complete. But by definition, if that's complete, the rain can enter the interior and trigger coverage, right? That's what it says. Rain entering the interior is covered if the building is otherwise complete. I agree that's what the policy states, Your Honor. Yes. Correct. But the interest... So if rain enters the interior and the roof is not complete, there's no coverage? I would submit to the court that this is not a well-drafted policy. It is an ambiguous policy. Well, what's ambiguous about that? If it enters the interior and the roof isn't complete, there's no coverage. What's ambiguous about that? It's when we look at the remainder of the policy and the other terms that are specifically defined that it becomes clear that this policy is ambiguous. The problem there, counsel, is I think another way to think about it is that the rain provision clearly says, you know, if the roof is only partially complete, it's not going to be covered. And if rain hits a partially complete roof, by your definition, that would become surface water and that provision would no longer make any sense. So it's the only way to understand the very specific provision that says there will be no rain coverage until the roof is 100% complete is that if it's partially complete and the rain hits the partial roof and then comes inside, it's not covered. Your Honor, I would I would submit that this is a little different as well in that we're talking not just about... we're talking about a combination of the passage of time and the accumulation of the water. I don't know if the court has had the opportunity to view the videos. They have been submitted into the record. We're not talking about rain that just hits the roof and then immediately trickles into into the building. There are, within the videos, we can see, I would estimate, an inch and a half, two inches of water sitting on the roof in one video. We can see water just pouring through level by level by level. So this isn't just an issue of the rain hitting the water and then hitting the roof and then trickling in. This is, in part, an accumulation of that rain with the passage of time. And so to the court's concern about, well, how does this rain exclusion apply? Again, the burden is on the insurer to draft clear and unambiguous exclusions. The policy specifically covers water damage and it defines water damage as any loss from water except loss caused by or resulting from flood. So in one section of the policy, the definitions identify and recognize the characterization of water and, moreover, the definition of flood specifically identifies that flood does not mean the accumulation of water from any source on a roof. Any source. Yeah, but then, like every insurance policy known to mankind, there is exclusions. And why should we forget about the exclusion when the exclusion seems to be so plainly applicable here? The exclusion here, though, is for rain. And again, this is not a situation in which the rain struck the damaged item and that the claim is for damage to the area where the rain landed. In this case, the rain landed, sat there, accumulated, and then eventually leaks into the building. At some point, there has to be a transformation from rain to surface water. And the cases and the authorities recognize that. The Washington law is very clear that ambiguities are interpreted on behalf of the insured. Had the insurance company wished to exclude this type of loss, they could have done so. It is significant that within the definition of flood, the court, or I'm sorry, the insurer specifically states. Just go back to, forgive me for interrupting, going back to the point you're making. So let's assume that the roof is incomplete, but because of the way it is angled, it takes five minutes before the rain that falls on that roof enters the building and causes damage. Are you saying the exclusion does not apply because it took five minutes before that rain was sufficiently high enough, the accumulation was sufficiently high enough to overcome that slight tilt? I'm saying that in that particular situation, the insurer could have drafted an exclusion that addressed that particular, that specific type of concern. So your answer to my question, I think as you said, is unless the rain goes directly into the building, the exclusion does not apply. I think that that, especially in light of... Even if it takes a full 10 seconds before it enters. I think that that is a situation in which the rain exclusion would apply. I think that these insurers did a incomplete way or an incomplete job in defining their exclusions. I'd like to look at the definition of flood, because really that's what we're talking about here. We've had lots of discussion about... I'm sorry. It's a definition, but it's not connected to the rain exclusion. Flood is its own exclusion, but what's important there and significant, and really that's what we're talking about here, is as I said, I believe this is a flood situation rather than a rain situation. The policy defines flood... We have a policy that excludes flood but not rain, and then this would clarify what constitutes flood. We have a policy that expressly excludes rain under all these conditions. I mean, I'm not sure... I guess what we keep coming back to, it very clearly says that rain won't be covered until the roof is complete, and it specifies that all... That means all the final components have to be completely and permanently installed. Roof and roof drainage systems, exterior walls, windows, doors, vents. If all of those... Let's say everything except, you know, a mechanical and electrical system is installed, I mean, and it rains heavily as it would do in this area of Washington, there would be... Presumably, it would take a while for rain to get inside the system, but I don't see how it would not be excluded under this. Your Honor, and at the risk of sounding redundant, the insurers have the obligation to draft these exclusions, and remember that we interpret these policies in the aggregate. We look at every component. I don't mean to interrupt, but you wanted to reserve some of your time. Yes, and so I would like to reserve time. Thank you. Are you sure we can take judicial notice that it rains in Washington? Good morning. May it please the Court. My name is Ian Leifer on behalf of the insurers. We are asking this Court to affirm the District Court's grantal or dismissal of Vanderbilt's claims. I'll first address the rain exclusion. I'll then talk about the extra contractual claims, and then, if time allowing, I will discuss the faulty inadequate construction exclusion as well. We're asking the Court to affirm the District Court's dismissal of the rain exclusion for four specific reasons, many of which were just touched upon. This policy, or these policies, do not contemplate rain and surface water as separate perils. In fact, surface water is not mentioned anywhere in the policies themselves. Vanderbilt's main argument in this case is that exceptions to exclusions create affirmative grants of coverage that override the rain exclusion, and what I mean by that is water damage is mentioned in the exclusions having to do with fungus, and then there's another fungus exclusion, but it's fungus dry rot wet rot. It's mentioned there and says, hey, if there is this in the resulting water damage, we will cover that at a sub limit of 25,000. Meanwhile, with flood, flood is also separately excluded. What it says is flood is not the accumulation of rain or accumulation of water on the roof, but that doesn't displace or erode the rain exclusion. It, in fact, makes it clearer. None of the cases relied upon by either of these parties have addressed this specific factual scenario of this case, and what I mean by that is none of them address the building under construction. None of them contemplate a building from the ground up. As such, the value of those cases are of limited effect. Vanderbilt's interpretation of the rain exclusion would erode it, as the court has already pointed out, once it reaches the point of partial completion where there's a place for the rain to land upon and then enter into the structure, which violates the language of the exclusion itself. You know, context matters when it comes to insurance policies and trying to interpret ambiguity. You know, policy is not ambiguous just based upon the language of it. You also have to look at the facts of the case. Here, the undisputed material facts are really clear. The policies themselves contemplate being for ground-up construction of a new hotel in Bellevue, Washington. The policies are all risk policies, meaning that the peril isn't excluded, then it is covered by the policy. The project was incomplete and not dried in during the winter and fall of 2016, and it does as it does in Washington. It rained and it rained, and it rained in September, it rained in October, it rained in November, and it rained in December. Once it rained, the rain landed upon the incomplete roof and made its way into the structure. The project was dried in, meaning weatherproof, on December 21st, 2016, and there are no claims for after that date. The rain exclusion itself is really clear, as the court has already identified. The rain exclusion applies to rain or snow entering the interior of the project unless the exterior is complete, and the policy goes on to explain when the exterior is complete. The exterior is complete when it is fully weather-resistant and all final components. Policy goes even further. It tells us what those final components are. It tells us the roof and roof drainage system are part of those final components. In Washington, there's the doctrine known as the characterization of perils, and this is articulated in the Kish case, and in Kish, the insured in that case argued, hey, there's a flood exclusion, but it wasn't flood. Rain is covered under this policy, and so therefore, because rain is covered, there's a question of fact. This should go to a jury to decide whether it was rain that entered the property or flood that entered the property, and the Washington Supreme Court said no. This is a judicial question that needs to be answered by the court, and in this case, a reasonable insurer is going to believe that rain can cause a flood, and so rain-induced flood is not separately excluded, and there is no question of fact that needs to go to a jury. Similar to this, similar to Kish, the rain exclusion here contemplates rain fallen as still being rain, and we know that based upon the final component. The obvious consequence of having an incomplete roof and no drainage system is that rain will fall upon the surface and have nowhere to go, and so therefore, it must accumulate in that circumstance. If it accumulates, it is still rain. Undefined terms in Washington law are given their plain and unambiguous meaning. The district court here looked to Merriam-Webster dictionary. There's the Eagle West case out of the Western District that looked to the same definition of rain, and it held that water that has fallen can still be rain. It's just rainwater. Interpretation of similar exclusions support our position as well. There's the Amish court case out of the Iowa Supreme Court and the Bradford case out of the Fifth Circuit. In both of those cases, rain does not damage anything midair, and it's discussed, as the court pointed out aptly, it cannot damage anything until it has fallen, and once it has fallen, then, only then, can it damage something. Moreover, exclusions are not grants of coverage, so the entire argument that's premised on the water damage or accumulation of water from any source as being a separate peril is not valid under the Harrison plumbing case out of the Court of Appeals. Water damage is distinct and defined, yes, and it says that it applies in circumstances where there's fungus, wet rot, or dry rot, or bacteria that result in water damage that is covered. Similarly, the flood exclusion, once again, explains there's an exception to when the flood exclusion does apply, and that's the accumulation of water, but neither of those displace or disrupt the rain exclusion. I mean, all of the exclusions have to be read together, and if either of them are read to limit the rain exclusion, then it would do nothing in this case. Vanderbilt offers three hypotheticals in its briefing. I actually think the hypotheticals are a good exercise as to demonstrate just the fallacy in its argument. First, Vanderbilt argues that damage to the exterior caused by snow or rain would be excluded. Well, this is plainly wrong. You know, the exclusion is very clear. It has to be damage to the interior, so that hypothetical has to be when this exclusion would apply fails. The second is, is damage or snow fell through an open roof, but does not define open roof, that would also be excluded by this policy. But the issue with this is we know that it was an open roof, in fact. It was an open roof until the project was dried in. The project was dried in on December 21, 2016. Afterwards, there were no more occurrences. The final example or the final hypothetical offered is if rain blew directly through the windows and landed directly onto the electrical cables, that would apply. Then now the rain exclusion would apply. But that creates it's such a limited application of the rain exclusion that would be almost impossible to enforce. Because we'd have situations where rain entered in through an open window, it pooled to some degree, and then it touched a cable. Well now, based upon their own interpretation of the policy, that's no longer rain. That is now changed into a different peril, even though it landed directly in the inside of the building. Once again, an untenable position to take. Vanderbilt relies upon the Nova case once again, and has continued to rely upon this case. The holding in the First Circuit is actually really a key issue there. The holding in that case was the failure of the terrain was the efficient approximate cause. It was not the surface water or rainwater distinction. In fact, the parties did not dispute whether or not it was or was not surface water. The First Circuit actually had a chance to revisit this case last year, and they ended up certifying a question to the Massachusetts Supreme Court to address the issue of surface water versus rain, whether or not those policies differentiated between the two of them. And those policies, it did differentiate the two of them, but once again it mentioned surface water. I think one of the other cases they rely upon heavily is the Paulson case out of the Wyoming Supreme Court. And there it says, and I think this is important for the analysis, it says, obviously there's such a thing as surface water, at least in the minds of the parties to the contract in which they used the term. Here, surface water is not anywhere in these policies. And so you're importing ambiguity or alleging you can import ambiguity from looking at other language and other policies, bringing that language and inserting it into this policy. That's not sound contract interpretation. With respect to the extra contractual claims, we asked the court to affirm the district court's dismissal of those as well. The requisite element of damage is missing from such claims, and such the court need to look no farther as far as analysis is concerned. The hunting case before this court, a couple years ago, held that as well. There must be a showing of damages that's related to the alleged bad faith conduct for those claims to survive. With respect to IFCA directly, which is the Insurance Fair Conduct Act, the claim must be based upon an unreasonable denial of benefits. Even if for some reason the court would disrupt the opinion based upon the application of the rain exclusion, when it comes to IFCA, the claim should still fail based upon the district court's ruling. It is at least a reasonable interpretation of this exclusion that the rain exclusion would apply in this case. As far as the delay claim is concerned, you know, clumsy claim handling is not a basis for a claim. I represent that I don't believe it was clumsy claims handling. We don't have any sort of testimony indicting the process here. There's no expert that says what was done was in bad faith. There's nothing to support the timing was unreasonable based upon the specific facts of this case. The claim itself was reported 16 months after the losses. It was once the company was in receivership that the claim was reported. Then it took about a year for the documents to get to the insurers. There is some dispute about what took so long as far as the documents. I don't believe any of that is material. The main argument that they hang their briefing on is is an email that was sent by an attorney for the insurers prior to suit being filed. And in that email he says the second phase of the investigation has moved slowly because the receiver has moved slowly. The receiver is not pressuring insurers for a claim position, but we can believe that insurers will be able to provide a claim position to the receiver in the next two weeks. There's nothing that says anything was done to slow play or any nefarious act was going on here to slow play this. It's also important to to know with respect to the bad faith claim that the parties entered into a tolling agreement allowing the statute of limitations to be delayed to give the chance for the insurers to investigate this claim. And it was always up to the insurer if they wanted to opt out of that tolling agreement. Eventually they did so in March of 2021 and then the suit followed. As far as I will talk briefly upon the faulty workmanship exclusion, you know, the faulty workmanship exclusion was not reached the district court. The district court's analysis ended at the rain exclusion. But it's called, we named it faulty workmanship. It's a bit of a misnomer. The exclusion itself is much broader than that. It says that there's inadequate planning, development, process, construction, maintenance. Then it's all excluded loss. Based on the record here there was some argument that the temporary pumps failed and that is the water was able to accumulate and not displaced. To the extent they rely upon the faulty pumps or inadequate pumps, that would be separately excluded by these policies based upon this exclusion. And that becomes important somewhat also in the nature of the claim. There's been some back and forth about the dates of when the loss occurred. It's my understanding now that the insured's position in this case is really that it was a ubiquitous loss that started in mid-October and proceeded for the next three months until the the loss was brought in. So to the extent that, you know, the court is going to reach that exclusion, this would fall within the purview of that. And there's, we cite the cases that address that exclusion. We interpret it pretty broadly based upon the language of it as well in our brief. Unless the court has any questions for me, I will. No, thank you. No, thank you. Thank you. And we'd ask the court to affirm. Council, before you get started, I did want to give you an opportunity to address one question I had about your Washington state law claims. My understanding is that the district court found there was no showing of harm, and I couldn't see anywhere in your briefs on appeal addressing that ruling, which seems dispositive. Did you address that in your briefing? Not on the issue of harm specifically. Our argument is that that is a question of fact of the jury. The court dismissed the state law claims, the extra contractual claims, as a result of finding that there was no coverage here. If there is coverage, then Vandiver should be afforded the opportunity to argue damages. I mean, we do have the causation and the harm is relative to the delay. There are significant evidence of damages vis-a-vis the amount of loss that only if there's coverage. Correct. Correct. So I wanted to address the flood exclusion because I think that this shows this exclusion shows the context by which we see that rain is not necessarily the end all be all in this case. The policy defines flood means a general and temporary condition during which the surface of normally dry land is partially or completely inundated, which arises from rain and result in runoff. If it is intuitive, as the insurer argues, that rain results in a flood, why did they need to identify specifically that flood is excluded if it arises from rain? There would be no other reason. That is the true exclusion that should apply here, but it doesn't work for the insurers because they go on to specify that flood does not mean water accumulated on a roof from whatever source. We understand your overturn and remand. Thank you. This case is submitted in five minutes.
judges: GRABER, SUNG, Rakoff